# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NADINE CHATMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>SONNY PURDUE,<br>Secretary, United States Department of<br>Agriculture,<br><br>    Defendant. | Civil Action No. 17-1826 (JEB) |

## MEMORANDUM OPINION

Plaintiff Nadine M. Chatman filed this *pro se* suit on September 7, 2017, against the

United States Department of Agriculture, alleging that USDA had engaged in numerous

discriminatory practices based on her race, age, gender, and filing of complaints with her Equal

Employment Opportunity office.  Chatman alleges that this behavior violated Title VII of the

Civil Rights Act of 1964 and the Age Discrimination in Employment Act.  As this litigation has

progressed, she believes that Defendant has not been sufficiently forthcoming in its discovery

responses.  She thus now moves to compel.  As most of her requests exceed what is relevant or

permissible, the Court will largely deny her Motion.

## I.     Background

Chatman, a black woman born in 1954, began working at USDA in October 2011 as a

temporary employee with a term not to exceed four years.  See ECF No. 17 (Def. Answer) at 1,

4; ECF No. 15 (Am. Compl.) at 1.  Her first assignment was as a Program Specialist in the Equal

Employment Opportunity Conflict Office.  See Am. Compl. at 2; Def. Answer at 1.  She was

subsequently reassigned to the Corporate Services Division in the Office of the Assistant

1

Secretary for Civil Rights (OASCR), where she remained until the end of her tenure in September 2015.  Id.  In this role, Plaintiff provided aggrieved individuals with information about their rights and obligations under equal-employment laws, gathered data on complaints, and possessed the authority to attempt an informal resolution between the individuals and agency.  Id.; see U.S. Equal Emp't Opportunity Comm'n, Equal Employment Opportunity Pre-Complaint Processing, (Feb. 20, 2020), https://www.eeoc.gov.  While she enjoyed her position at USDA and hoped to continue, her work environment became increasingly hostile.

Chatman alleges that harsh treatment began in 2013, when her initial first-level supervisor, Barbara Moore, implied that she was mentally disabled, reminded her constantly of upper management's watchful eye, implemented intimidation tactics by demanding that Plaintiff use teleworking privileges that Moore knew had been suspended, and falsely accused her of stealing work documents.  See Am. Compl. at 3–4, 6.  Sometime in 2014, after she filed a complaint with the agency's Office of Special Counsel and was named as a witness in two prior EEO complaints against Moore, she was treated more severely.  Id.  For example, Chatman indicated that in November of 2014, which was a few months after her OSC filing, her performance-review rating was suddenly adjusted from "Outstanding" to the lower level of "Superior."  Id. at 21.

While Plaintiff lists other interactions where she felt targeted, she alleges that her improper treatment escalated when she discovered the sexual harassment and intimate relationships that existed amongst her supervisors and co-workers.  Id. at 22–23.  Although she gives no specification of when this occurred, Chatman contends that her in-depth knowledge of these secret interactions not only led to the "unexplainable promotion" of others but also resulted in retaliatory tactics from her supervisors.  Id. at 20, 22–24.  On one occasion, Chatman

recounted, her subsequent first-level supervisor, Candice Glover, gave a position to an allegedly unqualified candidate instead of selecting Plaintiff for permanent employment. Id. at 24. She also alleges that her fourth-level supervisor, Joe Leonard, unfairly accused her of stealing files and favored applicants who he felt could satisfy his sexual desires. Id. at 10–11, 22, 24. Last, Chatman alleges that in addition to being ostracized for her awareness of the aforementioned behavior, she was not considered for other positions within USDA because of her age and race. Id. at 20.

On September 6, 2019, Plaintiff sent Interrogatories and Requests for Production and Admission to Defendant. See ECF No. 29 (Def. Opp. to Pl. Mot. Compel) at 1. On November 6, at the conclusion of a status conference, the parties met to determine which responses were still outstanding; however, they were unable to come to an agreement regarding which materials were relevant for Plaintiff's case. Id. at 2. The Court thus permitted Plaintiff to file this Motion to Compel.

## II.      Legal Standard

Federal Rule of Civil Procedure 26(b)(1) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information is relevant when it "bears on, [or could reasonably] lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). The Federal Rules and this Court encourage the exchange of information through good-faith discovery and communication, but, while discovery is broadly allowed, it is not limitless. Under Federal Rule 26(b)(2)(C)(iii), the Court "may limit discovery on its own initiative, if it determines that the burden or expense of the proposed discovery outweighs its likely benefit, [when] taking into account the needs of the case, the amount in controversy, the

3

parties' resources, the importance of the issue at stake in the litigation, and the importance of the proposed discovery in resolving those issues." Meijer, Inc. v. Warner Chilcott Holdings Co., III., Ltd., 245 F.R.D. 26, 30 (D.D.C. 2007) (quotation marks omitted).

## III.    Analysis

The parties have not been able to resolve their differences regarding fourteen interrogatories and twenty-five document requests. Chatman contends that all her inquiries are pertinent to her claims under the ADEA and Title VII. See ECF No. 30 (Pl. Resp.) at 1. Defendant, however, asserts that while Plaintiff alleges that she was "subjected to discrimination on the basis of color, race, age, gender and/or retaliation[,] . . . the majority of [her] Interrogatories and Requests for Production are not" related to her specific discrimination claims. See Def. Opp. at 1. USDA contends that the information sought is "overly broad and not reasonably calculated to lead to the discovery of admissible evidence." Id. The Court has thoroughly examined all of the discovery requests and objections, and it considers them in groups according to subject matter. It does so while noting its difficulty in clearly categorizing Plaintiff's interrogatories and document requests, as each contained numerous questions veering in different directions.

The first group of interrogatories and document requests seek a variety of material — generally human-resource records — regarding entire USDA departments as well as groups of individual employees who are not relevant to Plaintiff's claims. Interrogatory Nos. 19, 23, 28, 29, and 30 and Document Request Nos. 1, 8, 12, 16, and 18, for the most part, cast too wide a net by demanding an extensive amount of information not in any way related to Plaintiff's discrimination claims. Document Request No. 8, for example, seeks all EEO Complaints filed against eight individuals — many of whom may not even have been employed by USDA, as

4

their identity is unclear.  Chatman never attempts to explain how this information will aid her case.  Document Request No. 1, moreover, seeks "any and all" documentation regarding Senior Executive Service appointments to OASCR, but Plaintiff does not explain how all files regarding this high-ranking position are relevant to her discrimination claims.  These document requests are not reasonably calculated to lead to the discovery of admissible evidence and will be denied.

Chatman's other requests in this category purportedly seek comparator evidence, but list individuals who could never have been her comparator.  For example, Document Request No. 12 seeks a plethora of personal information regarding Candice Glover, ranging from bonuses and promotions to her resume and the notes from every member of the selection panel that played a hand in her hiring.  Yet Plaintiff never contends that Glover received any type of preferential treatment (such as obtaining a promotion) over her.  As a result, these discovery requests will also be denied.

Chatman also seeks detailed information about the personal and intimate relationships among several USDA employees, arguing that this is necessary to reveal the systemic sexual harassment that permeated her department.  Document Request No. 25, for example, seeks all files regarding the alleged sexual harassment of another USDA employee by her fourth-level supervisor, Joe Leonard.  Plaintiff, although referring to sexual harassment in her Amended Complaint, never alleges an instance in which she was the victim.  Instead, Chatman uses Interrogatory Nos. 6 and 27 and Document Request Nos. 2, 3, 7, 9, 14, 21, 24, 25, 26, 27, 28, 29, and 30 to suggest that others either experienced sexual harassment or are engaged in illicit activities on the taxpayer's dime.  While the Court does not condone sexual harassment or fraud in the workplace, any remedy unconnected to Chatman does not lie within this lawsuit.  As none of these requests is relevant to Plaintiff's specific claims of discrimination, they will be denied.

Two other requests, Interrogatory Nos. 7 and 24, are not relevant because they improperly seek document production through interrogatory requests. Others, like Interrogatory Nos. 5, 18, 21, 22, and 25 and Document Request Nos. 13, 15, and 20, are not relevant because they largely seek information regarding individuals never mentioned in the Amended Complaint, and Chatman has not provided enough background information to establish a relationship between these individuals and her claims. For example, Interrogatory No. 22 and Document Request 15 seek, among other things, the number of discrimination complaints June Kalijarvi, an attorney who filed EEO complaints against USDA, has brought since 1999. Plaintiff has not explained how the number of discrimination complaints filed by a lawyer with no ascertainable connection to this case, dating back almost two decades, is relevant. Requests like these also must be denied.

Chatman, however, does not lose across the board. The Court will grant Request Nos. 5, 11, 19, and 23, in part, as they seek comparator information regarding candidates Plaintiff alleges unfairly received positions over her as a result of USDA's discriminatory actions. Chatman seeks human-resource files regarding Crystal Gist, whom she alleges was underqualified and unfairly received a position within USDA rightfully belonging to Plaintiff, and Leila Levi, a white woman below forty, who allegedly received a promotion Chatman was well qualified for but excluded from because of her age and race. See Am. Compl. at 20, 24. The Court thus acknowledges the propriety of these discovery requests, but only to an extent. Some material in these women's human-resource files may specifically relate to their hiring, promotion, or qualifications. Any other material in the files need not be disclosed.

**IV.      Conclusion**

For the following reasons, the Court will grant in part and deny in part Plaintiff's Motion

to Compel.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  March 11, 2020